# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANGELA M. BRANCH ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 16-0499-N |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| **Social Security Commissioner** ) | |
| ) | |
|    Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g) Plaintiff, Angela Branch ("Branch" or "Plaintiff") seeks judicial review of an adverse social security ruling denying supplemental security income. (Docs. 1, 13). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (See Docs. 16, 18). Oral argument was heard on April 13, 2017. After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

---

[1] Nancy A. Berryhill has replaced Carolyn Colvin and is now the acting Social Security Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively applied for a supplemental security income on January 23, 2013, asserting a disability onset date of February 14, 2001. (Tr. at 17, 124-131). Plaintiff attended a hearing before an Administrative Law Judge (ALJ") on April 8, 2015, and the ALJ rendered an unfavorable decision on April 24, 2015. (TR. at 14-28, 34-70).

At the time of the administrative hearing, Plaintiff was forty-seven years old, had completed the eighth grade and had no previous work history. (Doc. 13; Fact Sheet). Plaintiff alleges she is disabled due to borderline intellectual functioning and diabetes mellitus. (*Id.*) On April 24, 2015, an ALJ denied benefits after determining that Plaintiff was not disabled and had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with some nonexertional limitations. (TR. at 22, 25). Plaintiff requested review of the hearing decision, but the Appeals Council denied the request on August 12, 2016. (TR. at 1-6).

Plaintiff claims that the ALJ committed reversible error in failing to find that Plaintiff met the listing requirement of 12.05C and in failing to find that Plaintiff suffers from a severe impairment of diabetes mellitus. (Doc. 13, generally). Defendant has responded to—and denies—these claims. (Doc. 14).

2

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)

("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the

4

Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

**DISCUSSION**

Plaintiff asserts that the ALJ erred by (1) "failing to properly consider, at step three of the sequential evaluation process, whether Plaintiff's impairment or combination of impairments is of a severity to meet or medically equal the criteria of listing 12.05(c)" and (2) "failing to find that Plaintiff suffers severe impairment of diabetes mellitus." (Doc. 13 at 1-2). Because an analysis of the relevant listing requirement is partially reliant upon a determination of whether the ALJ erred in not finding Plaintiff's diabetes as severe, the undersigned will address Plaintiff's second assignment of error first.

**A.     Severe Impairment**

Plaintiff contends that the ALJ reversibly erred by failing to find that Plaintiff's diabetes mellitus is severe based on Plaintiff treatment for the same dating back to 2010. More specifically, Plaintiff points to (1) a diagnoses of uncontrolled diabetes on March 5, 2013; (2) a consultative exam on August 7, 2013, by Dr. Brooks wherein Plaintiff was diagnosed with morbid obesity and mild adult onset diabetes that appears to be under good

5

control; and (3) a diagnoses of uncontrolled diabetes on July 5, 2013. (Doc. 13 at 4). Plaintiff asserts that her non-compliance with her diabetes medicine was the result of her inability to afford her copays. (*Id*.) Defendant argues the Plaintiff has not shown that her diabetes mellitus caused any functional limitations. (Doc. 14 at 4). [2]

"An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *See also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("The 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); and Social Security Ruling 96-3p ("evidence about the functionally limiting effects of an individual's impairment(s) must

---

[2] Defendant initially argues that the ALJ's failure to find Plaintiff's diabetes mellitus severe is irrelevant because Plaintiff was found to have another severe impairment requiring the ALJ to continue the disability evaluation process. *See Burgin v. Comm'r*, 420 Fed. Appx. 901, 902 (11th Cir. 2011) ("The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe.") (*citing to Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987). Defendant's argument is compelling because Plaintiff does not assert that the ALJ failed to consider the non-severe impairment in determining Plaintiff's RFC. Nevertheless, the undersigned will address Plaintiff's contention of error.

be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities").

At step two, the ALJ determined that Plaintiff had a severe impairment of mild intellectual deficit. (TR. at 19). In reaching this conclusion, it is clear that the ALJ also considered the severity of Plaintiff's diabetes. In that regard, the ALJ stated as follows:

> At the hearing, the claimant testified that she has been diabetic for ten years. She takes metformin twice a day. Her sugar level runs 170 at night and drop [sic] during the day, generally around noon. She will drink orange juice to bring it back up. She wears comfortable slippers rather than diabetic shoes because the latter hurt her feet.
>
> The claimant has been diagnosed with diabetes mellitus. She has been under appropriate medical care for this condition. Abnormal blood sugar levels have been associated with treatment noncompliance. Even so, there is no indication of ongoing symptoms, complications or end-organ damage. On January 24, 2013, her medications included metformin 1,000mg twice daily and glipizide 5mg twice daily. On March 5, 2013, she was noted to have a history of being noncompliant with diet and medications. Although she claimed to be doing better with her medications with her diet and to be following medications properly, she had not brought her medications with her and "doesn't seem to be sure about what she's taking." Her A1c was 8.5 (Exhibit B1F). On June 10, 2014, her A1c was 11. On July 2013, her A1c was 8.8. At an office visit, she was described as "extremely noncompliant with medications and diet…Never brings her medicines, always forget… Always confused on what she's taking." She admitted that she had not taken her diabetes medication "for a few weeks" and was just picking them up that day. (Exhibit B4F).
>
> On October 8, 2013, her glucose was 200. Her primary care provider again noted, "she is extremely uncompliant with medications…. This has been the issue with her all these months." Her diabetes was uncontrolled. She was also noncompliant with her diet. She was only taking metformin. She reported at times the copays were unaffordable. She was prescribed only generic medication. No changes were made to her medications. Her primary care provider stresses compliance with her treatment plan. (Exhibit B4F).

7

Therefore, her diabetes does not represent a severe impairment.

(TR. at 19-20). The ALJ also gave great weight to the consultative examiner Dr. Brooks who opined "This woman appears fully capable of performing most jobs even at a very heavy work rate…I see no impairments, no significant medical diseases other than her morbid obesity and very mild diabetes mellitus which she has as a result of her obesity." (TR. at 21, 291).

The entirety of Plaintiff's argument on this assignment of error states as follows: "Based on Plaintiff's treatment records detailed above, Plaintiff suffers from a severe impairment of diabetes mellitus. Plaintiff's treatment records repeatedly note diabetes mellitus beginning in 2010. The Plaintiff's diabetes mellitus is more than a slight abnormality and would be expected to interfere with Plaintiff's ability to work." (Doc. 13 at 5-6). While Plaintiff has a history of diabetes, there is no indication that the ALJ's assessment of her condition was not based on substantial evidence. Further, despite Plaintiff's assertion that her condition would interfere with her ability to work, Plaintiff points to no evidence in the record which the ALJ erroneously failed to consider that would support her allegation. As such, Plaintiff has not shown, based on the objective medical evidence that her diabetes would interfere with Plaintiff's ability to work. Accordingly, the ALJ did not err by failing to find Plaintiff's impairment of diabetes mellitus to be severe.

**B.     The 12.05C Listing Requirements**

Plaintiff contends that that ALJ erred by failing to determine that

Plaintiff met the listing requirements of 12.05C. At step three of the sequential evaluation process the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. at 21). The ALJ then determined Plaintiff's residual functional capacity (RFC) and found she could perform a full range of work at all exertional levels but with a number of nonexertional limitations. (*Id.* at 22.)

To "meet" a listing at step three, the claimant must have an impairment that "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). Listing 12.05C states as follows:

> Intellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> …
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2016). "Listing 12.05 contains an introduction that includes the 'diagnostic description for mental retardation' and also 'four sets of criteria' in paragraphs A through D.

If the claimant's mental impairment 'satisfies the diagnostic description ... and any one of the four sets of criteria' in Listing 12.05, then the claimant's impairment meets the mental retardation listing, and the claimant is presumed disabled." *Hickel v. Commissioner of Social Security*, 539 Fed.Appx. 980, 983 (11th Cir. 2013) (internal citations omitted). However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Hickel*, 539 Fed.Appx. at 983-84. *(citing to Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992))*; see also Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. 1986) (stating that the ALJ may disregard IQ test results that are inconsistent with other record evidence because the regulations require the ALJ to examine intelligence tests and other evidence, such as the medical report and the claimant's daily activities and behavior).

On July 12, 2013, Plaintiff obtained a verbal comprehension score of 61, a working memory score of 66, and a full scale IQ score of 60 on the Wechsler Adult Intelligence Scale- Fourth Edition. (TR. at 21). After considering the record, however, the ALJ determined that Plaintiff did not meet the criteria of deficits in adaptive functioning. (*Id*.) More specifically, the ALJ stated as follows:

> The record does not establish the claimant meets the basic criteria of deficits in adaptive functioning as there is no evidence of limitations in self-care, home living, self-direction, communication, or interpersonal skills. The claimant testified that she attended special education classes. The claimant initially reported she [sic] the highest grade she completed was fifth in 1979; however, at the hearing, she testified that

10

> she completed the eighth grade (Exhibit B2E.). On June 28, 2013, the claimant could not remember the grade she completed but reported her grades had been A's and B's. She stated that she was raised by her grandmother and stopped school to help care for her brother. (Exhibit B6F). At the hearing, she reported that her mother took her out of school at the age of 16. At the hearing, the claimant testified that she has been married three times. She was eighteen years old at the time of her first marriage, which lasted ten years and produced two children. Her children are now 27 and 26.
>
> […]
>
> The claimant's activities subsequent to age twenty-two do not suggest the deficits in adaptive functioning contemplated by the listing were previously present. At the hearing, she testified that her second marriage lasted about two years, and her current marriage has lasted thirteen years. In a function report, the claimant was noted to feed and take care of her pets without help. She had no problem with personal care. She prepared her own meals. She did not want to go out alone, but did shop in stores every two weeks. She spent time on the computer daily. (Exhibit B5E). On June 28, 2013, she reported having normal family relationships. She described her daily activities as helping her husband cook, watching television, washing clothes, going to the grocery store with her husband, talking to her daughter on the phone, and visiting her son. (Exhibit B6F). At the hearing, the claimant testified that that she is able to cook complete meal such as fried chicken. She has three dogs, two live indoors and one lives outdoors, and four cats. She usually attends church twice a week; this includes Sunday school and prayer meetings. While she does not currently have a driver's license, she had one in the past. She took the oral driver's license test. She stopped driving after her husband was in a serious car accident. She sees her son daily.

(TR at 21-22.) The ALJ went on to summarize the opinion of M. Hope Jackson, Ph.D., as follows:

> On July 19, 2013, M. Hope Jackson, Ph.D. opined that the claimant is able to understand and recall simple instructions but not detailed ones, carry out simple tasks adequate to complete an eight hour workday with customary breaks, and maintain attention and concentration for at least two hours with customary breaks. She noted that contact with the general public should be infrequent; supervision and feedback be in clear, simple terms; and demands at work be mostly routine. (Exhibit B1A). Her opinion has been given great weight because it is consistent with the treatment and examination evidence.

11

(TR. at 24).

Plaintiff acknowledges the considerations of the ALJ in her brief and does not argue that they are inaccurate. Instead, to show that Plaintiff met the listing requirement, Plaintiff relies on her valid IQ score of 60 and the diagnoses of mild mental retardation by Dr. Lucile T. Williams, Psy.D in combination with Plaintiff's impairment of diabetes mellitus. Plaintiff additionally rebuts the ALJ's determination relating to adaptive functioning by pointing to Plaintiff's testimony that she attended special education classes through the eighth grade[3] and was taken out of school at the age of sixteen, that Plaintiff could not write in cursive, that Plaintiff's husband an/or sister read everything to her, and that she took an oral test when obtaining her driver's license. (Doc. 13 at 3).

As an initial matter, Plaintiff has not established that the ALJ's determination as to Plaintiff adaptive functioning is in error. To the contrary, despite the circumstances/facts cited to by Plaintiff, this Court finds that there was substantial evidence in the record on which the ALJ properly relied in determining that Plaintiff did not have the adaptive deficits to meet the listing requirement of 12.05C. Further, as discussed herein above, the ALJ's determination that Plaintiff's diabetes mellitus was not severe was based on substantial evidence. Accordingly, even assuming Plaintiff met the

---

[3] Plaintiff's school records are not available for review because the Mobile County Board of Education does not maintain special education records or IQ testing for student born prior to 1975. (Doc. 13 at 3).

adaptive function criteria of listing 12.05C, the ALJ's determination that Plaintiff did not meet the listing requirements of 12.05C would still be valid based on Plaintiff's failure to meet the second prong of the listing requirement, i.e., a physical or other mental impairment imposing an additional and significant work-related limitation of function. As such, Plaintiff's assertion that the ALJ erred is without merit.

## CONCLUSION

Plaintiff has raised two claims in bringing this action; both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMMISSED**. Judgment will be entered by separate Order.

DONE this 25th day of April 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**